OPINION OF THE COURT
Carol R. Edmead, J.
In this action alleging unlawful employment discrimination on the basis of a prior criminal conviction, defendants Consolidated Edison, Inc. (CEI)[1] and Consolidated Edison Company of New York, Inc. (ConEd) move for dismissal of the amended complaint pursuant to CPLR 3211 (a) (7) for failure to state a cause of action.
Factual Background
Plaintiff, one of the police officers involved in, what both sides describe as, the notorious, brutal torture and sodomy of Haitian immigrant Abner Louima, brings this suit alleging that he was wrongfully terminated based on his 2002 perjury conviction, and vacated convictions, stemming from the incident.
Plaintiff alleges that in 1999 he was convicted of participating in and conspiring to participate in the assault of Louima. On appeal, the Second Circuit vacated these decisions and remanded for a new trial. In the new trial, in addition to the original charges for conspiracy and violations of Louima’s civil rights, plaintiff was charged with two counts of perjury stemming from the trial testimony. Plaintiff was then convicted of one count of perjury in 2002.[2]
Plaintiff alleges that in July 2014 he applied for a mechanic position with ConEd, and disclosed his perjury conviction on *834 his application. After successfully completing a written examination, screening interview, physical ability test, road test, medical examination, and CPR course, plaintiff was hired on November 17, 2014 and assigned to gas operations in Manhattan, where he investigated inside and outside gas leaks.[3]
However, the following week, on November 24, 2014, construction supervisor Robert McGrath approached plaintiff regarding his employment with ConEd. McGrath told plaintiff that “we need to talk” because everyone “downstairs” knew who he was, and his hiring “blew up the building and people are talking.” Plaintiff claims that “[u]pon information and belief,” McGrath was referring to plaintiffs conviction and alleged involvement in the Louima case.
Approximately two weeks thereafter, on December 10, 2014, Vincent Frankel, the Director of Employee and Labor Relations for ConEd, called plaintiff and terminated him due to “potential disruption of business operations” and “damage to the Company’s reputation” if plaintiff were allowed to continue working there. Frankel notified plaintiff that ConEd was concerned that plaintiff’s employment would cause disruption among other employees and ConEd’s clients. Plaintiff allegedly responded that he believed he was being terminated due to his controversial conviction, which Frankel did not deny. Plaintiff states that “[u]pon information and belief,” ConEd terminated his employment due to his convictions.
Consequently, plaintiff alleges violations of the New York State Human Rights Law (NYSHRL) (Executive Law § 296 [15]) (first cause of action) and New York City Human Rights Law (Administrative Code of City of NY § 8-107 [10] [a]) (second cause of action), which incorporate Correction Law article 23-A’s (article 23-A) prohibition against denying an individual employment “by reason of the individual’s having been previously convicted of one or more criminal offenses” un *835 less two exceptions apply (Correction Law § 752). As to the two exceptions, plaintiff alleges his convictions are unrelated to the position he held at ConEd and that there was no reason to believe, based on these convictions, that plaintiff’s continued employment would pose an “unreasonable risk to property or the safety or welfare of specific individuals or the general public.” ConEd unlawfully terminated plaintiff’s employment because of his criminal conviction history and/or a finding of lack of good moral character based on his criminal conviction history, thereby causing plaintiff to suffer, inter alia, irreparable injury, monetary damages, and damage to his reputation.
In support of dismissal, ConEd argues that plaintiff’s claim that he was terminated because of his 2002 perjury conviction is wholly conclusory and inherently incredible. There are no factual allegations indicating that ConEd fired plaintiff because of his perjury conviction, about which ConEd knew when it hired him. Plaintiff concedes that there was nothing during the employment application process to indicate that plaintiff’s perjury conviction would impede his ability to obtain the position; plaintiff also concedes that ConEd was aware of the perjury conviction when he was hired, and that ConEd terminated him because it was concerned, instead, that his employment would disrupt the workplace. Thus, something other than plaintiff’s conviction caused ConEd to terminate plaintiff’s employment. Article 23-A focuses on the fact of a conviction and the offense for which an individual was convicted. ConEd had a right to terminate plaintiff because of the business and reputational risks that plaintiff’s presence created when the decision was made to terminate him. ConEd points out that plaintiff’s notoriety and his association with the incident resulted in the publication of hundreds of articles which included plaintiff’s name. And, allegations premised “upon information and belief” are insufficient to support the causes of action. And, Frankel’s purported silence when plaintiff opined that his termination was based on his controversial conviction is insufficient to support plaintiff’s claims.
The complaint impermissibly seeks to expand article 23-A to include plaintiff’s notoriety and reputation. As indicated by the Memorandum of Senator Marino and Assemblyman Fink in Support of 1976 NY Senate-Assembly Bill S4222-C and A5393-C (Bill Jacket, L 1976, ch 931), article 23-A was enacted to eliminate the practice of categorically rejecting any job applicant with a criminal record. ConEd hired plaintiff knowing *836 of his perjury conviction, and thus, the motivation of the statute is not implicated. And, article 23-A was amended in 2007 to protect existing employees from adverse employment actions based on convictions that predated the employee’s employment.[4] Article 23-A does not prohibit terminating an employee for reasons such as disruption to business where the perceived threat stems from the notoriety and perceptions of the employee’s past conduct. The protected category is identified as the employee’s previous conviction, and allows discrimination based on a previous conviction under two exceptions.
Nor does article 23-A require employers to give preferential treatment to ex-convicts by excluding from consideration conduct that did not result in a conviction. And, had ConEd considered whether the exceptions applied and applied the eight-factor test applicable to this statute, ConEd would have been limited to consideration of plaintiff’s perjury conviction and the conduct of lying under oath.
In opposition, plaintiff argues that he sufficiently pleads that he is a member of a protected class (ex-convict), he was qualified to hold his position with ConEd, he was terminated from employment, and that his termination occurred under circumstances giving rise to an inference of discrimination based on his prior convictions.
As to the inference of discrimination, plaintiff’s perjury conviction is inextricably intertwined with his connection with and notoriety to the Louima incident, and thus termination based on this connection is a termination based on the underlying conviction. The alleged disruption of business operations and damage to ConEd’s reputation are invalid justifications for discrimination based on plaintiff’s conviction, and do not fall into any of the two exceptions under the statutes. And, even assuming such reasons were valid, there is no claim that ConEd considered the eight factors outlined in the statute to permit an employer to terminate an employee based on a conviction. Plaintiff alleges that ConEd terminated him due to its concern that his status as a convicted felon may impact the company’s business.
The New York City Local Civil Rights Restoration Act of 2005 amended the New York City Human Rights law to *837 expressly require a liberal construction of the statute. ConEd’s narrow construction conflicts with the purpose of the law, is illogical, and is at odds with the legislative intent to render unlawful discrimination based on one’s record of convictions.
Plaintiff posits that the New York City and State Human Rights Laws were implemented to allow ex-convicts to rehabilitate and reintegrate into society by obtaining gainful employment for which they are qualified rather than being thwarted in their efforts to obtain employment due to the stigma attached to their reputations as a result of their convictions. If employers were permitted to terminate individuals because of their reputation as criminals rather than the criminal convictions themselves, the criminal conviction discrimination laws would become a nullity and have no practical effect. Criminal convictions have a stigmatizing effect on ex-convicts, which prevent them from being rehabilitated and successfully integrating into society, and results in recidivism. All convicted criminals are tainted with a poor reputation based on their criminal convictions, which is the reason the laws were enacted in the first place. But for plaintiff’s perjury conviction and vacated assault/conspiracy convictions, which implicated him in the Louima incident, plaintiff would not be perceived as a “pariah” and ConEd would not have terminated him. Thus, plaintiff sufficiently alleged that he was terminated by reason of his conviction. As an employer would not be able to terminate a “black” employee for concern that coworkers and clients would not want to work with him or her, or that the company’s reputation will be harmed by hiring a “black” person, nor should employers such as ConEd be permitted to terminate plaintiff for such reasons.
Further, plaintiff’s amended complaint cures any deficiencies in the original complaint, in that plaintiff’s original conviction for the underlying assault of Louima is inextricably intertwined and linked to his reputation and notoriety, for which he was terminated. A termination based on plaintiff’s reputation is a termination based on the underlying assault/conspiracy convictions, though subsequently overturned. Thus, ConEd’s claim that the perjury conviction (of lying under oath) is unrelated to its reasons for terminating plaintiff is moot. Further, the original convictions fall within the protection of the New York City and State Human Rights Laws protecting one “having been previously convicted of one or more criminal offenses.” Case law has held that discrimination based on a perceived *838 conviction is actionable to the same extent as discrimination based on an actual conviction. To the extent ConEd terminated plaintiff due to his connection to the underlying assault of Louima (rather than the fact that he lied under oath), ConEd terminated him based on his original convictions in violation of the law.
In addition, plaintiff now alleges that he was terminated due to a finding of a lack of good moral character because of his convictions. ConEd acknowledges that it terminated plaintiff because of his reputation and notoriety in the incident, by believing that clients and employees will not work with plaintiff because he is viewed as a “bad person.” This perception stems from plaintiff’s convictions in the Louima case. Thus, to the extent ConEd terminated plaintiff based on his reputation as being a “bad person” because of his involvement in the Louima incident, such termination would still violate the laws prohibiting a termination of employment based on a finding of a lack of good moral character because of a previous conviction.
In reply, ConEd argues that article 23-A does not apply to plaintiff’s vacated conviction because a conviction vacated on appeal is not a conviction within the meaning of the law. Thus, the vacated conviction cannot serve as a basis for plaintiff’s claims under the New York State and City Human Rights Laws, incorporating article 23-A. Plaintiffs application did not disclose the vacated conviction, and if “convictions” included convictions vacated on appeal, then plaintiff could have been terminated for failing to disclose such convictions in his employment application. Plaintiff’s termination had nothing to do with the fact that he was convicted of perjury in 2002. His notoriety stemmed from his record as a police officer, not his record as a “criminal” as plaintiff claims. Article 23-A does not apply where the ex-offender is terminated for reasons other than a previous conviction. And, case law strictly construes the scope of article 23-A.
Further, the New York City Local Civil Rights Restoration Act cannot require a more liberal reading of the law in this case. New York City Administrative Code § 8-107 (10) expressly incorporates, and is predicated upon, the Correction Law. If there is no violation of the Correction Law, there is no violation of the New York City Administrative Code. There is no support for the position that the liberal construction required of the New York City Administrative Code applies to the court’s interpretation of the Correction Law.
*839 The amended complaint does not rectify the fact that the applicable law prohibits discrimination by reason of one having been previously convicted of one or more criminal offenses; it does not prohibit discrimination based on one’s criminal “record.” Plaintiff’s reputation and notoriety arise not from his perjury conviction, but from his reputation as a police officer who abused his authority to torture a helpless member of the public whom plaintiff was sworn to protect.
Further, plaintiff’s shameless comparison of himself to a black employee who is terminated allegedly out of concern that white coworkers and clients will not want to work with the black employee and that the company’s reputation will be harmed by hiring a black employee is inappropriate and misses the point that the perceived concerns of ConEd workers and customers were not based on plaintiffs perjury conviction.
Had ConEd considered the perjury conviction as a factor in determining plaintiff’s eligibility for employment, ConEd would have conducted its analysis as required under the statute, and could have lawfully denied his application due to the potentially adverse consequence of having a dishonest, corrupt, and unrehabilitated perjurer performing inspections of gas equipment and services in New York City. However, ConEd terminated plaintiff for reasons other than his perjury conviction. Plaintiff’s allegations concerning upper-level management’s termination of him because of his perjury conviction, Frankel’s silence on the telephone call, and McGrath’s comment that plaintiff’s hiring “blew up the building,” are insufficient to give rise to an inference of discrimination.
Discussion
In determining a motion to dismiss a complaint pursuant to CPLR 3211 (a) (7), the court’s role is deciding “whether the pleading states a cause of action, and if from its four corners factual allegations are discerned which taken together manifest any cause of action cognizable at law a motion for dismissal will fail” (African Diaspora Mar. Corp. v Golden Gate Yacht Club, 109 AD3d 204, 211 [1st Dept 2013]; Siegmund Strauss, Inc. v East 149th Realty Corp., 104 AD3d 401 [1st Dept 2013]). On a motion to dismiss, the court must “accept the facts alleged in the [complaint] as true,” accord plaintiffs “the benefit of every possible favorable inference,” and “determine only whether the facts as alleged fit within any cognizable legal theory” (Siegmund Strauss, Inc. v East 149th Realty Corp., 104 AD3d 401, 403 [2013], supra; Nonnon v City of New York, 9 NY3d 825 [2007]; Leon v Martinez, 84 NY2d 83, 87-88 [1994]).
*840 Nevertheless, the court may consider evidentiary material in evaluating a motion made under CPLR 3211 (a) (7); when such material is considered,
“the criterion is whether the proponent of the pleading has a cause of action, not whether he has stated one, and, unless it has been shown that a material fact as claimed by the pleader to be one is not a fact at all and unless it can be said that no significant dispute exists regarding it, again dismissal should not eventuate” (Guggenheimer v Ginzburg, 43 NY2d 268, 275 [1977]).
In other words, “[dismissal results only if the movant demonstrates conclusively that the plaintiff has no cause of action, or that ‘a material fact as claimed by the pleader to be one is not a fact at all’ ” (Laquila Group, Inc. v Hunt Constr. Group, Inc., 44 Misc 3d 1203[A], 2014 NY Slip Op 51007[U], *10 [Sup Ct, NY County 2014], citing Sokol v Leader, 74 AD3d 1180, 1181-1182 [2d Dept 2010]).
Under Executive Law § 296 (15),
“It shall be an unlawful discriminatory practice for any person . . . corporation or association ... to deny any license or employment to any individual by reason of his or her having been convicted of one or more criminal offenses, or by reason of a finding of a lack of ‘good moral character’ which is based upon his or her having been convicted of one or more criminal offenses, when such denial is in violation of the provisions of article twenty-three-A of the correction law.” (Emphasis added.)[5]
As relevant herein, article 23-A, Correction Law § 752, provides, in relevant part, as follows:
“No . . . employment. . . held by an individual, to which the provisions of this article are applicable, shall be denied or acted upon adversely by reason of the individual’s having been previously convicted of one or more criminal offenses, or by reason of a finding of lack of ‘good moral character’ when such *841 finding is based upon the fact that the individual has previously been convicted of one or more criminal offenses, unless:
“(1) there is a direct relationship between one or more of the previous criminal offenses and the specific license or employment sought or held by the individual; or
“(2) the . . . continuation of the employment would involve an unreasonable risk to property or to the safety or welfare of specific individuals or the general public.”[6]
To state a prima facie case of discrimination under the NYSHRL (Executive Law § 296 [15]), plaintiff must allege that: “(1) [ ]he was a member of a protected class; (2) [ ]he was competent to perform the job in question, or was performing the job duties satisfactorily; (3) [ ]he suffered an adverse employment action; and (4) the action occurred under circumstances that give rise to an inference of discrimination” (see McCoy v People Care Inc., 2013 WL 5313433, *5, 2013 US Dist LEXIS 134966, *16 [SD NY, Sept. 20, 2013, No. 11-Civ-2689 (RA)] [finding no evidence from which to infer that decision not to hire plaintiff was due to her prior convictions where denial of employment was based on interviewer’s interactions with plaintiff and observation of plaintiffs behavior while completing the job application, and no reference was made in employer’s notes to plaintiff’s convictions, but on her inability to follow instructions]).
By the facts as alleged in his amended complaint, plaintiff acknowledges that (1) ConEd hired him despite the fact that he reported his perjury conviction, and (2) ConEd’s subsequent termination of him was based on the assertion that “everyone knew” “who [plaintiff] was” (amended complaint f 33) and because of “potential disruption of business operations” and “damage to the Company’s reputation.” (Amended complaint *][ 36.) Plaintiff also alleges that he was involved in the Louima incident. However, there is no allegation that ConEd considered the perjury conviction as a factor in terminating the plaintiff; nor is there any mention of the perjury conviction with respect to plaintiff’s interaction with McGrath or Frankel. And, although not binding, case law submitted and found by the *842 court indicates that Frankel’s “silence” when plaintiff voiced his belief that he was being terminated for his convictions is insufficient to support an inference that plaintiff was terminated based on his perjury conviction (see Van Houdnos v Evans, 807 F2d 648, 655 [7th Cir 1986] [“Silence alone, however, is not evidence of discriminatory intent”]; Alms v AdvancePCS, 2006 WL 2032746, *3, 2006 US Dist LEXIS 50100, *11 [D Ariz, July 18, 2006, No. 2:04-CV-00332 (JWS)] [finding that silence by hiring agent did “not suggest he agreed with the age-discrimination allegation implicit in (plaintiff’s) question”]; Ali v Stetson Univ., Inc., 340 F Supp 2d 1320, 1325 [MD Fla 2004] [“Whatever might have been behind the board’s silence, it is not in the nature of a remark ‘whose intent could be nothing other than to discriminate’ ”]). Thus, when read as a whole, the amended complaint fails to support a claim that ConEd terminated him because of his perjury conviction of lying under oath.
Plaintiff’s attempt to expand the reach of article 23-A to prohibit discrimination based on plaintiff’s reputation and notoriety associated with his perjury conviction is also unavailing.
Article 23-A was enacted in 1976 in order to “aid” the rehabilitation of “ex-offenders” by removing job restrictions “because of their criminal records.” (Mem in Support of S4222-C & A5393-C by Senator Marino & Assemblyman Fink, Bill Jacket, L 1976, ch 931 [emphasis added].) At the time of its enactment, article 23-A applied solely in the context of one’s application for employment. Thus, by amendment in 2007, the protection against unfair discrimination was extended to employees, in order to prohibit an employer from terminating a current employee based on a “conviction” that occurred prior to the date of employment (Senate Introducer Mem in Support of S1602A by Senator Volker, Bill Jacket, L 2007, ch 284 at 6-7). As explained in the Memorandum in Support of the amendment, the then present law prohibited “unfair discrimination against individuals with criminal records whose convictions are unrelated to the job or license sought and do not constitute a threat to safety. . . . Section 752 of the Correction Law currently applfies] only to applicants for employment . . . who have criminal convictions” (id. at 6 [emphasis added]). Thus, article 23-A, as amended, “extends the anti-discrimination protections to current employees . . . whose convictions predate employment” (id. at 7 [emphasis added]). The Memo *843 randum further explained, that employers, with much easier access to computerized “criminal history information,” can obtain such information, “leading more employers” to “fire individuals with criminal records” (id. [emphasis added]). Its aim is to protect individuals from being denied employment by employers who “refuse to hire,” those “with criminal records” (id. [emphasis added]). Basically, the goal of the statute was to protect individuals from being denied employment due to an employer’s discovery or awareness of an individual’s preemployment criminal conviction. It is clear that the statute was intended to address the impact of a conviction appearing on one’s record upon an individual’s ability to rehabilitate and avoid recidivism.
In this matter, plaintiff included on his application his perjury conviction, and was hired nonetheless. Surely, under such factual scenario, it cannot be claimed that plaintiff’s perjury conviction impeded his gainful employment; indeed, the statute’s ameliorative purposes were fulfilled by the fact that ConEd hired plaintiff despite his perjury conviction.
It cannot be disputed that due to the New York City Local Civil Rights Restoration Act (Local Law No. 85 [2005] of City of NY), the New York City Human Rights Law now “explicitly requires an independent liberal construction analysis in all circumstances,” an analysis that “must be targeted to understanding and fulfilling what the statute characterizes as the City HRL’s ‘uniquely broad and remedial’ purposes, which go beyond those of counterpart state or federal civil rights laws” (Bennett v Health Mgt. Sys., Inc., 92 AD3d 29, 34 [1st Dept 2011] [emphasis omitted], citing Williams v New York City Hous. Auth., 61 AD3d 62, 66 [2009], lv denied 13 NY3d 702 [2009]). However, the New York City Human Rights Law incorporates the Correction Law, which only pertains to “convictions” and not vacated convictions or reputations.
As acknowledged by plaintiff, the legislature sought to address the stigmatizing effect criminal convictions have on ex-convicts (mem of law at 14). Under the facts as alleged however, the stigma attached to plaintiff does not arise from any “conviction.” No facts are alleged that ConEd terminated him because of his perjury conviction or because of ConEd’s knowledge or discovery that plaintiff was once found guilty of assault or conspiracy related to the assault of Louima. A liberal reading of the complaint and amended complaint indicates that ConEd’s termination was based on plaintiff’s reputational ef *844 feet on the workplace and on potential customers due to his association with the brutal treatment of Louima while in police custody, regardless of any “conviction.” In other words, the perjury conviction in and of itself was not the basis of his termination. And there are no facts indicating that the vacated convictions, even if considered a conviction (again, which this court does not so consider), was discovered and served as a basis for plaintiffs termination.
The distinction between a conviction and the notoriety arising from the circumstances giving rise to the conviction is material with regard to the scope of the statute, and cannot be ignored. The “statute sets out a broad general rule that employers and public agencies cannot deny employment or a license to an applicant solely based on status as an ex-offender” (Matter of Bonacorsa v Van Lindt, 71 NY2d 605, 611 [1988] [emphasis added]). Article 23-A was not intended to give rights to those discriminated against based on their reputations. No mention is made in the memoranda of any intent to protect against employment decisions based on one’s reputation or notoriety arising from events that gave rise to the conviction; quite simply, the statute extends to unfair discrimination based on one’s “convictions.”
Nor has plaintiff stated a claim against ConEd for unlawful discrimination based on plaintiff’s convictions that were subsequently vacated.
Based on a plain reading of the statute and case law interpreting same, the court finds that the absence of a legally cognizable conviction renders article 23-A and the New York State and City Human Rights Laws inapplicable. It is widely understood that a vacated conviction is not a conviction recognized by the law (Matter of Barash, 20 NY2d 154, 157-158 [1967] [“reversal of a conviction . . . nullifies it as if it had never been”]; In re Shapiro, 180 BR 37, 42 [ED NY 1995] [“the reversal of the Debtor-Defendant’s judgment of conviction renders such conviction a legal nullity and restores the Debtor-Defendant to the position of not having been convicted”]; People v Dozier, 163 AD2d 220, 223 [1st Dept 1990] [in the context of sentencing, “Following its reversal, defendant’s earlier conviction was no longer a conviction”]; People v Lewis, 143 Misc 2d 752, 754 [Sup Ct, Kings County 1989] [noting that following a reversal, a defendant’s earlier conviction is no longer a conviction, and as such, was not a “valid, existing or legally cognizable conviction”]). Thus, plaintiff’s vacated assault and *845 conspiracy convictions are not “convictions” that can serve as a basis for relief under article 23-A (see also Matter of Markman v New York State Dept. of Educ., 131 AD2d 908, 909 [3d Dept 1987] [“Since petitioner’s acts did not trigger a criminal prosecution and a resulting conviction, article 23-A is inapplicable”]; Marino v Consol. Edison Co., 2012 NY Slip Op 30408 [U], *6 [Sup Ct, NY County 2012] [finding that “plaintiffs allegation that his 2nd Arrest factored into his wrongful termination also falls short of satisfying a cause of action under Article 23-A of the NYCL. The statutory protections contemplated by Correction Law Article 23-A are for people convicted of a criminal offense . . . Plaintiff’s 2nd Arrest for DWI did not lead to a conviction, and therefore cannot be a basis for a wrongful termination claim under Article 23-A of the NYCL”]; Matter of Elgart v New York City Dept. of Educ., 25 Misc 3d 1231 [A], 2009 NY Slip Op 52366[U], *4 [Sup Ct, Kings County 2009] [ruling that the “statutory protection contemplated by Correction Law Article 23-A and Executive Law 296(15) are for people convicted of a criminal offense and since (plaintiff) has no convictions they do not apply to her”]).
Notably, the complaint alleges only that plaintiff listed the perjury conviction on his application; thus, plaintiff himself did not treat his vacated convictions as “convictions.” It is further noted that plaintiffs reliance on State Div. of Human Rights v Sorrento Cheese Co. (115 AD2d 323 [1985]) for the proposition that discrimination based on a perceived conviction is as actionable as discrimination based on an actual conviction is misplaced. In such case, plaintiff alleged that his employer terminated him upon discovering that he gave false information on his employment application as to his criminal record, in which plaintiff answered “No.” as to whether he had ever been convicted of “a crime.” The Fourth Department held that plaintiff answered truthfully on his application and demonstrated probable cause to believe that his employer unlawfully discriminated against him, where plaintiff’s employer “erroneously perceived” plaintiff’s disorderly conduct as a crime and terminated plaintiff for providing false information. Here, ConEd’s termination of plaintiff was unrelated to any crime for which plaintiff was convicted or to any “perception” of plaintiff’s conviction record. Instead, ConEd’s termination was based on the perception of plaintiff’s reputation and notoriety.
As a vacated conviction does not exist as a “conviction” in the eyes of the law, it cannot be said that the stigma referenced in *846 the statute was intended to encompass the stigma associated with a vacated conviction; the statute, a creature of law, cannot be read to include a principle not recognized by the law.
Consequently, plaintiff’s additional allegation that ConEd violated article 23-A’s prohibition of discrimination based on “a finding of lack of ‘good moral character’ ” fails, since such finding must have been “based upon the fact that the individual has previously been convicted of one or more criminal offenses” (Correction Law § 752).
ConEd’s strict interpretation of article 23-A does not conflict with the statute’s intended purposes. On the other hand, plaintiff’s interpretation that article 23-A would broadly prohibit discrimination based on convictions that were vacated, which would result in the requirement that applicants include convictions which were vacated or reversed on appeal on their employment applications, which is not only unsupported by the law, but would increase the potential of unfair discrimination in hiring and retention practices that the statute was intended to curtail. Since the amended complaint acknowledges that ConEd terminated plaintiff based on other employees’ and potential customers’ reaction to his reputation as one of the police officers involved in the notorious assault of Louima, and there is no indication that plaintiff’s perjury conviction was a factor in ConEd’s decision to terminate plaintiff, plaintiff failed to state a cause of action under New York State and City Human Rights Laws, or article 23-A as incorporated therein.
Conclusion
Based on the foregoing, it is hereby ordered that the motion by defendants to dismiss the amended complaint is granted.

. It is uncontested that CEI is ConEd’s corporate parent, and is a separate legal entity from ConEd that did not hire or employ plaintiff. And it is uncontested that the complaint does not allege any “extraordinary circumstances” or control over employment decisions of ConEd to render CEI liable for the alleged acts of ConEd. Thus, the branch of the motion to dismiss CEI from this action is warranted.

. Subsequent to the filing of ConEd’s motion, plaintiff amended his complaint to add, as factual background, that prior to his perjury conviction, his conviction in 1999 of participating and conspiring in the assault of Louima was vacated and that his perjury conviction resulted from a trial after the case was remanded on appeal. Plaintiff’s amended complaint includes the vacated convictions as well as the perjury conviction as additional grounds for ConEd’s alleged unlawful termination. In response to the amended complaint, ConEd advised that its motion to dismiss applied to the amended *834 complaint as well. Therefore, the court addresses the motion as applied to the amended complaint.

. Kimberly Allen-Foster (Foster), the ConEd employee who processed and hired plaintiff, was allegedly terminated in connection with her approval of plaintiff’s employment and commenced a suit against ConEd for unlawful termination (Allen-Foster v Consolidated Edison, Inc., Sup Ct, NY County, Edmead, J., index No. 152993/2015). In her complaint, Foster alleges that when confronted about her decision to hire plaintiff, she advised her supervisor that any refusal to hire plaintiff based on his criminal history would be unlawful. Foster was terminated on December 11, 2014.

. ConEd’s arguments premised on the contention that plaintiff did not allege that ConEd made a finding that he lacked “good moral character,” is rendered moot given that the amended complaint now alleges that ConEd terminated him due to a finding of a lack good moral character because of his convictions.

. Similarly, Administrative Code § 8-107 (10) (a) provides:
“It shall be unlawful discriminatory practice for any person to deny any license or permit or employment to any person by reason of his or her having been convicted of one or more criminal offenses, or by reason of a finding of a lack of ‘good moral character’ which is based on his or her having been convicted of one or more criminal offenses, when such denial is in violation of the provisions of article twenty-three-a of the correction law.” (Emphasis added.)

. Because ConEd does not contend that it terminated plaintiff based on the application of either of the two exceptions, the court does not address whether plaintiff states a claim as to the two exceptions.